# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CR-25-TLS |
| | ) | |
| LUIS CARRERA | ) | |

## OPINION AND ORDER

Law enforcement officers, who were working with a confidential source, believed that a shipment of cocaine would be arriving in Fort Wayne, Indiana, on April 17, 2017, and that the Defendant, Luis Carrera, would be the person delivering those drugs. After conducting a traffic stop, officers indeed recovered cocaine from a vehicle in which the Defendant was a passenger on that date.

A grand jury indicted the Defendant of knowingly and intentionally possessing with intent to distribute controlled substances, a violation of 21 U.S.C. § 841(a)(1). On May 10, 2017, the Defendant filed a Motion to Dismiss or, in the Alternative, to Suppress Evidence [ECF No. 23], seeking to dismiss the criminal complaint against him or to suppress all evidence obtained as a result of the search of the vehicle, or during any subsequent custodial interrogation. Upon referral from this Court, Magistrate Judge Susan L. Collins held an evidentiary hearings on June 16, 2017, received post-hearing briefing, and issued a Report and Recommendation [ECF No. 36], recommending that the Court deny the Defendant's Motion. On November 14, 2017, the Defendant filed his Objection to Magistrate's Report and Recommendation [ECF No. 37].

**BACKGROUND**

The following facts are supported by this Court's independent review of the hearing testimony and exhibits.

On April 17, 2017, Detective Gerardot conducted a traffic stop of the Defendant's vehicle. The stop was part of an ongoing drug investigation that the Drug Enforcement Administration (DEA) was conducting. DEA Task Force Officer (TFO) Peter Mooney had been receiving information from a confidential source who was facing federal drug charges. In December 2016, the source told TFO Mooney that he could receive a large amount of narcotics from a person in Hammond, Indiana. The source began exchanging voice calls and texts with this individual to arrange for the delivery. TFO Mooney monitored these calls and texts. Based on his training and experience, TFO Mooney believed that the individual was using the word "Cadillac" to refer to a kilogram of cocaine, and that when the Cadillac was "ready," the negotiated price of "34" meant $34,000. This price was within the range for the current market price for a kilogram of cocaine. By April 17, 2017, TFO Mooney knew that the individual from Hammond was Luis Carrera, the Defendant in this case. TFO Mooney believed that the Defendant and the source had arranged for the Defendant to come to Fort Wayne on April 17, 2017, to deliver the drugs to the source at the car lot where the source was employed.

On April 17, TFO Mooney and other members of the DEA held a briefing with respect to the Defendant's expected delivery of drugs and the source's receipt of them. The source was fitted with a monitoring and recording device. Although the plan was for the Defendant to meet the source at the car lot, the DEA advised that it would allow the source to lead the Defendant away from the lot before having a uniformed officer and K-9 unit conduct a traffic stop. This

was intended to prevent the Defendant from discovering that the source was working with law enforcement.

After the DEA briefing, the source waited at the car lot for the Defendant. Through the listening device, TFO Mooney could hear events as they transpired. Additionally, undercover agents were conducting visual surveillance in the area. When the Defendant arrived, the source texted TFO Mooney that the Defendant had arrived in a black Saab. However, when the Defendant made contact with the source, he showed the source to a different car. The source is heard on the recording asking the Defendant, "you got it on you?" The Defendant responded, "yeah, in the oil" and the source made a comment about it being "hidden." (Gov't Ex. 3.)[1] The source then told the Defendant to follow him. After the source was inside his own car, TFO Mooney called the source and asked if the drugs were in the white car. The source advised TFO Mooney that he saw it inside of an oil container in the back seat. TFO Mooney, in turn, relayed this information to the surveillance team, including Detective Gerardot.

When the source left the lot, the Defendant, who was accompanied by two other individuals, followed in a white Honda. Police surveillance was maintained on both vehicles. When TFO Mooney heard over the radio from one of the undercover officers who was conducting surveillance that the Defendant committed a speeding violation, he authorized uniformed officers to make a stop. Detective Gerardot stopped the vehicle. His discovery of cocaine inside the vehicle led to the Defendant's indictment for possession with intent to distribute a controlled substance.

---

[1] Exhibit 3 is the recording from the listening device that was on the source. Anything that can be heard on the recording is something that TFO Mooney was able to hear live on April 17, 2017. It also captured TFO Mooney's conversation with the source.

# ANALYSIS

Under 28 U.S.C. § 636(b)(1)(A)–(B), a magistrate judge does not have authority to issue a final order on a motion to suppress evidence in a criminal case. Instead, the magistrate judge submits proposed findings of fact and recommendations to the district court. If a party files a timely objection to the magistrate judge's report and recommendation, § 636(b)(1) provides that

> the district judge is to make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The court may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge also may receive further evidence or recommit the matter to the magistrate judge with instructions.

Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## A.      Reliance on Confidential Source

The Fourth Amendment protects the right of "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996).

Police officers are justified in conducting a brief investigative stop if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "A *Terry* investigative stop is 'a brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal

4

activity.'" *United States v. Bullock*, 632 F.3d 1004, 1014–15 (7th Cir. 2011) (quoting *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995)). Although reasonable suspicion requires more than a mere "hunch," it is a measure of suspicion less demanding than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also Bullock*, 632 F.3d at 1012 (noting that reasonable suspicion deals with probabilities, not hard certainties). It is a "commonsense, nontechnical" concept that deals with "the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotation marks omitted). In assessing the reasonableness of a *Terry* stop, the facts are "judged against an objective standard: would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (quoting *Terry*, 392 U.S. at 21–22). When officers are in communication regarding a suspect or are working together at a scene, the knowledge of one officer may be imputed to the other officers under the collective knowledge doctrine. *United States v. Sawyer*, 224 F.3d 675, 680 (7th Cir. 2000); *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) ("The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action.").

The Magistrate Judge concluded that the officer's surveillance and the collective knowledge gained from conversations between the source and the Defendant provided reasonable suspicion to conduct a stop of the Defendant's vehicle for further investigation. The Defendant asserts that the police did not have a lawful basis to conduct the April 17, 2017, traffic

stop. He specifically challenges the Magistrate Judge's conclusion that the source provided sufficient reliable information to establish reasonable suspicion that the Defendant was involved in criminal activity. He maintains "that the only verifiable, predictive information provided by the [source] was [the Defendant's] location, which is insufficient to establish reasonable suspicion." (Def.'s Objection 5, ECF No. 37.)

The Defendant's argument focuses solely on the events of April 17, 2017. In taking this limited snapshot of what was known to law enforcement, the Defendant pushes aside the months of communication between the source and the Defendant to arrange the drug transaction. It would not be appropriate for the Court to limit its review to the events of April 17, 2017. In determining whether an officer's suspicion of criminal activity was reasonable, a court must take into account "the whole picture" and whether it supports a "particularized suspicion." *United States v. Cortez*, 449 U.S. 411, 418 (1981); *see also United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (noting that when deciding whether officers had the requisite particularized suspicion, courts "do not consider in isolation each variable of the equation that may add up to reasonable suspicion," but "consider the sum of all of the information known to officers at the time of the stop") (quoting *Matz v. Klotka*, 769 F.3d 517, 523 (7th Cir. 2014)). Although the Defendant does, at the end of his analysis, acknowledge law enforcement's efforts prior to April 17, he discounts those efforts, refusing to even credit it as an "investigation" because all of law enforcement's "information came from a meth-dealing, federally-indicted individual that none of the officers had worked with before" and none of the text messages "expressly referenced drugs." (Def.'s Objection 6.)

It is undisputed that prior to December 2016 the officers had not worked with the source.

But past performance is only "one way of establishing the veracity or reliability of an informant." *United States v. Mitten*, 592 F.3d 767, 774 (7th Cir. 2010) (noting that "police are not limited to relying only on informants with proven track records of providing truthful information"). By April 2017, TFO Mooney had nearly five months to determine whether the source was providing accurate information. A confidential informant's reliability is increased when law enforcement agents are able to confirm the informant's information. *See United States v. Washburn*, 383 F.3d 638, 642–43 (7th Cir. 2004). The source stated that a Hispanic male from Hammond planned to bring a large quantity of narcotics to Fort Wayne. The source then exchanged telephone conversations and text messages with the individual to make the arrangements. TFO Mooney believed that the conversations were consistent with negotiating for the delivery of one kilogram of cocaine for $34,000. The exact day of the delivery and the meet location were both arranged with sufficient particularity that law enforcement was prompted to arrange a coordinated effort to seize the drugs while they were in the Defendant's possession. When the Defendant arrived at the meeting location, monitoring equipment allowed law enforcement to hear anything the source said, as well as the Defendant's statements. The Defendant was also advising TFO Mooney of events as they occurred. When the specific cars the officers were targeting—the source's car and the white Honda following it—left the parking lot, undercover officers were able to maintain visual surveillance.

The Defendant complains that drugs were never mentioned during the telephone and text exchanges. "It is well known that drug dealers commonly use code language out of fear that their conversations will be intercepted." *United States v. Harris*, 271 F.3d 690, 702 (7th Cir. 2001). Moreover, if the source had been misleading TFO Mooney for five months, and Cadillac was a

reference to an actual vehicle and not to drugs, one of the vehicles that arrived in Fort Wayne on April 17 should have been a Cadillac. Plus, the source's question to the Defendant, "You got it on you," would have been nonsensical in relation to a vehicle. Likewise, the Defendant's response that it was "in the oil" (Gov't Ex. 3) (which the source clarified to TFO Mooney was an oil container in the back seat) suggested that the object was the size of a one kilogram brick of cocaine. It also lends support to the suspicion that it was something the Defendant was trying to conceal from public view. The Defendant then followed the source from the parking lot as planned. The arranged meeting appeared consistent with what the source said was its purpose—to deliver illegal drugs.

The Defendant maintains that the source is not reliable because he was facing his own federal drug charges. But informants who are trying to lessen the consequences of their own crime by assisting in a drug investigation are not unusual. *See Mitten*, 592 F.3d at 774. As the Seventh Circuit has recognized, this "does not make the information they provide inherently unreliable." *Id.*; *see also United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) ("A motive to curry favor . . . does not necessarily render an informant unreliable. Indeed, even informants 'attempt[ing] to strike a bargain with the police [have] a strong incentive to provide accurate and specific information rather than false information about [a defendant's] illegal activity.'") (quoting *United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002)). This incentive exists because any benefit the informant is seeking "is generally contingent upon the information provided by such an informant being accurate and useful." *Mitten*, 592 F.3d at 774; *see also* U.S.S.G. § 5K1.1 (citing factors for consideration of whether substantial assistance departure is warranted to include the "significance and usefulness of the defendant's assistance" and its

8

"truthfulness, completeness, and reliability"). It is reasonable to conclude that the source, who was represented by counsel, would have been advised of the requirement to provide accurate and reliable information.

This is not the kind of case that is on the line between reasonable suspicion and pure hunch. "[R]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). TFO Mooney had reason to believe, based on his work with the source and the audio and visual surveillance, that the Defendant came to Fort Wayne to deliver cocaine to the source, and that the cocaine would be located in the white Honda. By acting at TFO Mooney's direction, Detective Gerardot could rely on the DEA's knowledge and stop the vehicle. Although Detective Gerardot believed he also had probable cause to stop the car for speeding, his "motivations for the stop and search do not affect the collective knowledge doctrine analysis." *Williams*, 627 F.3d at 254.

Finding no error in the Magistrate Judge's findings of fact regarding the underlying drug investigation and the circumstances leading up to the traffic stop, the Court ADOPTS those findings of fact. The Court also ADOPTS the Magistrate Judge's conclusion that these facts established reasonable suspicion to believe that the Defendant was transporting drugs in the white Honda, and supported stopping the vehicle for further investigation. The Defendant has not attributed any error to the Magistrate Judge's finding of facts or conclusions regarding the search of the vehicle, and the Court ADOPTS those conclusions as well.

**B.     Application of Collective Knowledge Doctrine to Justify the Traffic Stop**

The Supreme Court has held that the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Smith*, 668 F.3d 427, 430 (7th Cir. 2012) ("A traffic stop does not violate the Fourth Amendment when the police officer has probable cause to believe that a driver has committed [a traffic violation]."). Probable cause exists when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

The Defendant argues that the Magistrate Judge's finding that there was probable cause to stop the Defendant's vehicle for speeding is erroneous. He maintains that application of the facts to the collective knowledge doctrine does not support the conclusion that the undercover officer's radio communication that the Defendant's vehicle was traveling 55 miles per hour in a 45 mile per hour zone provided probable cause for Detective Gerardot to perform a traffic stop. The undercover officer who reported the speeding violation did not testify at the evidentiary hearing. None of the grounds upon which he based his speeding assessment are before the Court. Therefore, the Defendant argues, the Court cannot determine whether the officer providing the information had sufficient facts to support a reasonable belief that the driver was speeding, which is the second element required to apply the collective knowledge doctrine. *See Williams*, 627 F.3d at 252–53 (stating that the doctrine applies if (1) the officer taking the action acted in objective reliance on the information (2) the officer or agent providing the information had facts supporting the level of suspicion required, and (3) the stop was no more intrusive than would

have been permissible for the officer requesting it).

The Court need not determine whether the second element of the collective knowledge doctrine was satisfied with respect to the purported speeding violation because the same doctrine already provided sufficient basis to conduct an investigative stop of the vehicle based on articulable suspicion that it contained drugs. Therefore, the Court does not adopt the portion of the Report and Recommendation that discusses probable cause for a traffic offense. On the current record, the Court MODIFIES the findings to eliminate the conclusion that the undercover officer's relaying over the radio to Detective Gerardot that the Defendant's vehicle was traveling at 55 miles per hour in a 45 mile per hour zone provided probable cause to perform the traffic stop.

## CONCLUSION

For the reasons stated above, the Report and Recommendation [ECF No. 36] is ADOPTED IN PART, and the Defendant's Motion to Dismiss or, in the Alternative, to Suppress Evidence [ECF No. 23] is DENIED. The trial, and related deadlines, will be set by separate order.

SO ORDERED on December 4, 2017.

     s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT